UNITED STATES, Appellant and Cross-Appellee

v.

BURTON M. OFFLEY, WALTER ALLEY, JR., GERRY L. STANDISH and WILLIE J. RAVEN, Privates E–1, U. S. Army, Appellees and Cross-Appellants

3 USCMA 276, 12 CMR 32

No. 1841

Decided September 4, 1953

LT COL William R. Ward, U. S. Army, for Appellant and Cross-Appellee.
LT COL Edgar R. Minnich, U. S. Army, and 1ST LT Wade J. Dahood, U. S. Army, for Appellees and Cross-Appellants.

## Opinion of the Court

PAUL W. BROSMAN, Judge:

Following a joint trial by general court-martial, the four persons accused in this case were convicted of causing a riot in the prison stockade at Fort Ord, California, in violation of the Uniform Code of Military Justice, Article 116, 50 USC § 710. The convening authority approved the findings, but reduced substantially the period of confinement imposed. A board of review in the office of The Judge Advocate General, United States Army, reversed the convictions for an asserted error of law—which we shall consider shortly—and ordered a rehearing. Thereafter, The Judge Advocate General certified to this Court the following question:

"Was refusal of the law officer to give the instruction defining reasonable doubt, as requested by defense counsel, reversible error under the circumstances of this case wherein the law officer read the charge covering reasonable doubt set forth in the Uniform Code of Military Justice, Article 51c(1), (2), and (3), and referred the court to the Manual for Courts-Martial, 1951, paragraph 74a, which includes a complete definition of the term 'reasonable doubt'?"

A petition for review filed on behalf of the accused was also granted by the Court. In general, it is directed to the issue raised by The Judge Advocate General.

## II

A statement of the unfortunate facts leading to the present prosecutions is unnecessary to an understanding of the question before us. Suffice it to say that at the conclusion of the evidence, and following arguments, defense counsel submitted several requests for instructions. The one of interest to us here relates principally to the meaning of "reasonable doubt." The requested instruction, as submitted, is set out below:

"Each accused is presumed to be innocent until the contrary is proved, and in case of a reasonable doubt whether the guilt of each is satisfactorily shown, each accused is entitled to an acquittal, but the effect of this presumption is only to place upon the Government the burden of proving each of them guilty beyond a reasonable doubt. Reasonable doubt is defined as follows: It is not a mere possible doubt; because everything relating to human affairs, and depending on moral evidence, is open to some possible or imaginary doubt. It is that state of the case which, after the entire comparison and consideration of all the evidence, leaves the minds of the court in that condition that they cannot say they feel an abiding conviction, to a moral certainty, of the truth of the charge."

The law officer refused the offered instruction, but instead—as is reflected in the certified question quoted earlier

**278**

herein—charged the court-martial on the subject of reasonable doubt in substantially the language of Article 51(c) of the Code, supra, 50 USC § 626(c). In addition, he referred its members to the Manual for Courts-Martial, United States, 1951, paragraph 74a, which in its third subsection contains a definition of the term. However, he did not otherwise attempt to define the phrase in question. We are not here concerned with the first sentence of the proposed instruction. Since its content was clearly covered in the charge as given by the law officer, our sole present interest is in the succeeding two sentences.

## III

At the outset it must be noted that the instruction sought is not phrased in language identical with that used in the explanation of the term contained in paragraph 74a(3) of the Manual, supra. However, its phrasing is in accord with the "reasonable doubt" instruction specifically, or in substance, approved in the opinions of several Federal decisions. Agnew v. United States, 165 US 36, 51, 41 L ed 624, 17 S Ct 235; Berkowitz v. United States, 5 F2d 967 (CA 3d Cir); Blatt v. United States, 60 F2d 481 (CA 3d Cir). It has uniformly been held to be reversible error to refuse to give such an offered instruction or an equivalent when requested. Egan v. United States, 287 F 958 (CA DC Cir); Schencks v. United States, 2 F2d 185 (CA DC Cir); Blatt v. United States, supra; see Nanfito v. United States, 20 F2d 376 (CA 8th Cir).

In United States v. Soukup, 2 USCMA 141, 7 CMR 17, decided January 23, 1953, this Court ■■■■■■■ ■ made clear that a law officer is not—in the absence of request—under a duty to define "reasonable doubt." All that the Code and Manual require of him—without such a request—is that he instruct the members of the court that the guilt of the accused must be established beyond a "reasonable doubt," and that any "reasonable doubt" must be resolved in favor of the accused. Uniform Code, supra, Article 51(c), (1), (2), 50 USC § 626 (c) (1), (2); Manual, supra, paragraphs 73b(1), (2), 73c(1); see

United States v. Felton, 2 USCMA 630, 10 CMR 128, decided June 12, 1953. This is entirely consistent with the Federal civilian practice. Mundy v. United States, 176 F2d 32 (CA DC Cir). However, a specific request to charge, setting out the precise language desired, was made by defense counsel in this case—thus bringing very different considerations into play.

With respect to additional instructions, paragraph 73c of the Manual might appear to vest complete and final control in the law officer. Thus, paragraph 73c(1) provides as follows:

"The law officer is not required to give the court any instructions other than those required by Article 51c (73a, b). However, when he deems it necessary or desirable, he may give the court such additional instructions as will assist it in making its findings. . . . ."

And paragraph 73c(2) states that:

"If the law officer deems it necessary or desirable that the court be given additional instructions, he may recess the court so that he may have time to prepare such instructions; he may request counsel for both sides to furnish him with proposed additional instructions as to a particular issue in the case or as to any or all of the offenses charged. . . . ."

However, despite the absence of a specific Manual provision authorizing defense counsel to submit, ▮ without solicitation from the law officer, requests for additional instructions, and suggested forms therefor, we do not hesitate to say that the draftsmen of the Manual could have had no sort of intention to bar action of this nature by defense counsel. Paragraph 48c of the Manual states that:

"An officer or other military person acting as counsel for the accused before a general or special court-martial will perform such duties *as usually devolve upon the counsel for a defendant before a civil court in a criminal case.* . . . ." [Emphasis supplied].

Certainly, conscientious defense counsel in a criminal trial of the civilian community will ever pay most careful attention to instructions given the jury, requesting of the trial judge ones thought necessary or desirable, and presenting in the ordinary case, and in careful detail, the phrasing of the instructions sought. It is noteworthy that this Court has expressly placed on the shoulders of defense counsel the burden of requesting clarification or elaboration of instructions given. United States v. Soukup, *supra;* United States v. Felton, *supra.* Accordingly, in this branch of the problem before us, we must conclude that military defense counsel have free rein—limited only by the dictates of propriety, good order and common sense—to request additional instructions, and to submit proposals of the form such instructions might properly take.

IV

Our question then becomes: what is the duty of the law officer when presented with an unsolicited ▮ request for additional instructions? The permissive phraseology of paragraph 73c, *supra,* relating to such instructions proposed by counsel on the initiative of the law officer, is set out hereafter:

". . . . Any proposed instructions submitted by counsel will be presented in writing to the law officer and copies will be furnished to the opposing counsel. The law officer may accept, reject, or modify any proposed instruction that is submitted, and may substitute instructions of his own or refuse to give any instructions on a matter included in a proposed instruction submitted by counsel. . . . ."

We believe that no distinction should be taken in the foregoing respects between instructions drafted by counsel, following invitation by the law officer, and those submitted without request by the latter. Whether the law officer may see fit to grant a request for additional instructions, and whether he will transmit to the court a submitted instruction are matters necessarily resting in his *sound* discretion. He need not, of course, deliver a proposed instruction

**279**

in the precise words—or even the general form—in which it comes to him. If he determines, for example, that the gist of such an instruction should be given, he may modify the offered item in whole or in part, or may substitute a wholly different instruction of his own or the Manual's devising.

Whether a judicial officer has abused his authority as to a matter resting within the exercise of sound discretion is ever a question fraught with difficulty. Appellate tribunals—remote in time and place from the trial, and faced only with the bare pages of a frigid record—labor under a severe handicap. However, in the instant case, defense counsel had not only requested that the law officer expand on the meaning of "reasonable doubt," but in addition had submitted a proposed instruction which would serve to satisfy the request. We have observed in previous decisions that law officers are well-advised to give expository instructions as to the meaning of technical legal terms—indeed in the absence of a specific request from defense counsel. United States v. Soukup, *supra;* United States v. Cobb, 2 USCMA 339, 8 CMR 139, decided March 24, 1953; United States v. Felton, *supra.* Additional instructions of this nature impose but a slight burden on the law officer, but may be of incalculable benefit to the accused. Therefore, when a specific request for clarifying instructions is made—and particularly when accompanied by suggested language—we think it a clear abuse of discretion on the part of the law officer to reject the request. Indeed he need not use the particular instruction submitted, so long as the one he does give complies with the substance of the request. Being thus obliged in this case to instruct on the meaning of "reasonable doubt," the law officer's reference to paragraph 74a of the Manual did not fulfill the duty imposed on him. United States v. Gilbertson, 1 USCMA 465, 4 CMR 57, decided July 22, 1952; United States v. Cromartie, 1 USCMA 551, 4 CMR 143, decided August 6, 1952; United States v. Moreash, 1 USCMA 616, 5 CMR 44, decided August 27, 1952; United States v. Kubel, 1 USCMA 645, 5 CMR 73, decided August 29, 1952; United States v. Soukup, *supra.*

The question certified is answered in the affirmative, and the decision of the board of review is affirmed.

Chief Judge QUINN concurs.

LATIMER, Judge (dissenting):

I dissent.

The issue in this case seems to narrow down to whether we can ignore the plain wording of the Manual unless it is in conflict, either expressly or impliedly, with the Code. To date we have not gone quite that far as in those instances where we appear to have announced principles contrary to the Manual, we have concluded that fairly interpreted the Code required the results reached. Grouped generally, our opinions have held that it is necessary to instruct on the elements of the offense alleged and the four mandatory items prescribed in the Code (See United States v. Clay, 1 USCMA 74, 1 CMR 74, decided November 27, 1951); the elements of the included offense (United States v. Sylvester Clark, 1 USCMA 201, 2 CMR 107, decided February 29, 1952); the effect of intoxication on specific intent (United States v. Drew, 1 USCMA 471, 4 CMR 63, decided July 23, 1952); insanity when raised reasonably by the evidence (United States v. Burns, 2 USCMA 400, 9 CMR 30, decided April 15, 1953); on the effect of character evidence (United States v. Grady W. Phillips, 3 USCMA 137, 11 CMR 137, decided July 31, 1953); defenses such as knowledge of a superior officer, which are so closely interwoven with the issues that it is difficult to ascertain whether the item involved is an element of the offense or an affirmative defense (United States v. Charles F. Simmons, 1 USCMA 691, 5 CMR 119, decided September 26, 1952); and other issues of fact which go to the guilt or innocence of the accused (United States v. Ornelas, 2 USCMA 96, 6 CMR 96, decided December 31, 1952). It should be apparent that some of those cases saddle a burden on the law officer to give additional instructions not specifically provided for by the Manual. However, in all instances they

have involved issues which must be decided before an appropriate finding of guilt can be returned. In addition, they are so closely allied with the law of the case that a failure to instruct leaves the court-martial members without the guidepost necessary to assist them in their deliberations. These I will classify as the necessities and unless furnished the minimum requirements of the Code have not been complied with.

On the other hand we have held that in the absence of a request, it is not necessary for a law officer to give amplifying or clarifying instructions. In a sense, these can be considered the luxuries of a trial which are not made mandatory by the Code. This decision goes the last step and burdens the law officer with furnishing those niceties, when made the subject of a request, even at the expense of clarity and simplification. Because of the fact that in the military judicial system it is necessary that instructions be given by both law officers who are trained in the law, and presidents of special courts-martial who ordinarily are not, and because of the further fact that I prefer not to import unnecessary refinements into the system, I would not hold it prejudicial error for a law officer to refuse to define words of common understanding. In my opinion, defining words such as "reasonable doubt" does not aid an accused and for us to enforce a rule that involves only a play on words is to breed, unnecessarily, confusion and difficulty.

I would hold as I have indicated above without a Manual provision to the contrary, but here my views are buttressed by a statement in the Manual. Article 51 of the Code, 50 USC § 626, makes it mandatory for the law officer of a general court-martial and a president of a special court-martial to instruct on the elements of the offense and to charge the court as follows: that the accused is presumed innocent; that if there is a reasonable doubt as to the guilt of the accused, he shall be aquitted; that if there is a reasonable doubt as to the degree of guilt, a finding in a lower degree shall be returned; and that the burden of proof is upon the Government. It makes no further demands on the law officer. The Manual, paragraph 73, explains Article 51 and then goes on to state that explanatory matters may, but need not, be given and that the law officer is not required to give the court any instructions other than those required by that Article. Other statements are included in the paragraph which negate the right of an accused to any refinements in instruction. Stated in a manner most beneficial to the present holding, the sum and substance of those statements are to the effect that the giving of instructions other than those specifically required by the Code is discretionary with the law officer or president of the court. In view of this decision, I ask, "What discretion is there left for a law officer to exercise?"

Conceding that under certain circumstances it has been necessary to interpret the wording of the Manual contrary to what, at first blush, it appears to say, I see no good purpose in going further than is absolutely necessary to assure a fair and just trial. Reasonable doubt is an ordinary expression and well understood by members of military courts-martial. A definition would not add anything of importance to its meaning. It was not needed to clear up doubt or uncertainty as the phrase is self-defining. I concede that the Federal circuit courts of appeal have held contrary to my contention but not so in many of the state courts. They have adopted the rule that the phrase is one of ordinary meaning and that it is not error for a judge to refuse to give a definition of the terms. As a matter of fact, some of them have argued persuasively that to define the phrase makes for confusion rather than clarity.

In United States v. Day, 2 USCMA 416, 9 CMR 46, decided April 30, 1953, and United States v. Grady W. Phillips, *supra*, we held that words which are used in common parlance need not be defined without a request being made therefor by the accused. Those holdings merely perpetuate the civilian rule that if the matter is not raised at the trial level, it cannot be raised for the first time on appeal. They have nothing to do with the principle of prejudice, because, with or without a request, if the

words are not defined the court is no better informed in one instance than in the other. I have no quarrel with the rule announced therein but the principle might be applied differently had there been an injustice created. There was none there and so we permitted a waiver. We say here there was no waiver, but I assert the Manual is controlling in the absence of conflict with the Code, or perhaps in the event a literal interpretation of its provisions would bring about a plain miscarriage of justice. Neither are here present. I, therefore, find no reason nor excuse for judicially legislating precisely contrary to the Manual. It strikes me rather strangely that in the absence of a grave injustice, accused can successfully maintain we should interpret the Manual in such a way that we require a law officer to do what the Manual clearly states he need not do.

The Court concedes that had the law officer read the definition from the Manual or had he given the one requested by accused, there would have been no error. I shall quote both to emphasize why I believe the holding in this case requires a law officer to substitute obfuscation for clarity. The Manual (paragraph 74a(3)) goes to some length to define the phrase in the following words:

". . . By 'reasonable doubt' is intended not fanciful or ingenious doubt or conjecture but substantial, honest, conscientious doubt suggested by the material evidence, or lack of it, in the case. It is an honest, substantial misgiving, generated by insufficiency of proof of guilt. It is not a captious doubt, nor a doubt suggested by the ingenuity of counsel or court and unwarranted by the testimony; nor a doubt born of a merciful inclination to permit the accused to escape conviction; nor a doubt prompted by sympathy for him or those connected with him. The meaning of the rule is that the proof must be such as to exclude not every hypothesis or possibility of innocence but any fair and rational hypothesis except that of guilt; what is required is not an absolute or mathematical certainty but a moral certainty. A

court-martial which acquits because, upon the evidence, the accused may possibly be innocent, falls as far short of appreciating the proper amount of proof required in a criminal trial as does a court which convicts on a mere possibility that the accused is guilty."

The instruction requested by the accused was as follows:

". . . Reasonable doubt is defined as follows: It is not a mere possible doubt; because everything relating to human affairs, and depending on moral evidence, is open to some possible or imaginary doubt. It is that state of the case which, after the entire comparison and consideration of all the evidence, leaves the minds of the court in that condition that they cannot say they feel an abiding conviction, to a moral certainty, of the truth of the charge."

I simply ask, is the court-martial better informed and can it more intelligently determine the burden of proof placed on the Government when it is read a definition which includes words and phrases like these: "fanciful doubt," "ingenious," "conjecture," "imaginary doubt," "abiding conviction," "moral certainty," and "moral evidence"? The best way to answer the question is to quote from two well-known and recognized authorities. Professor Edmund M. Morgan, whom we all recognize as the principal author of the Code and who perhaps considered his own philosphy about defining-instructions when he helped draft the Articles of the Code, has this to say in his Selected Essays on the Law of Evidence, Fourth Edition, 1949, page 63:

"Where proof beyond reasonable doubt is required, the charge should not be difficult to frame. Thus, in a criminal prosecution, when it is once determined what propositions of fact the prosecution has the burden of establishing, the jury may be instructed that they must acquit unless they are convinced beyond a reasonable doubt that each of such propositions is true. It is coming to be recognized that all attempts to define reasonable doubt by paraphrase or circumlocution tend only to obfuscate rather than clarify

the concept. Yet convictions are still being set aside because of refusals to charge in the highsounding but meaningless phraseology of the *Webster* case. This is the sort of conduct by courts of last resort which makes the request to charge a trap for the unwary trial judge. Where the judge specifies the particular facts to be proved by the state and then in plain language tells the jury that the state does not satisfy its burden of proving them unless the evidence convinces the jury beyond reasonable doubt of the existence of each of these facts, there is no danger that the average juror will fail to understand. If he is intelligent enough to sit upon a jury, he is intelligent enough to comprehend so simple an instruction. Where a court conceives itself to be helplessly bound by precedent to insist upon the repetition of incomprehensible formulae, the only relief lies in legislation. (See also Wigmore on *Evidence*, Third Edition, section 2497, page 318)."

Professor Wigmore in his works on Evidence, Section 2497, buttressed the view of Professor Morgan by making the following statement concerning the necessity of defining reasonable doubt:

"From time to time, various efforts have been made to define more in detail this elusive and undefinable state of mind. One that has received frequent sanction and has been quoted innumerable times is that of Chief Justice Shaw of Massachusetts, on the trial of Dr. Webster for the murder of Mr. Parkman: '[Reasonable doubt] is that state of the case, which, after the entire comparison and consideration of all the evidence, leaves the minds of jurors in that condition that they cannot say they feel an abiding conviction, to a moral certainty, of the truth of the charge. . . . The evidence must establish the truth of the fact to a reasonable and moral certainty,—a certainty that convinces and directs the understanding, and satisfies the reason and judgment.

. . . This we take to be proof beyond a reasonable doubt.'

"Many others, in varying forms, convey the same notion in more or less well-chosen words; and each Court has its stores of precedents of instructions approved and disapproved. Nevertheless, when anything more than a simple caution and a brief definition is given, the matter tends to become one of mere words, and the actual effect upon the jury, instead of being enlightenment, is likely to be rather confusion, or, at the least, a continued incomprehension. In practice, these detailed amplifications of the doctrine have usually degenerated into a mere tool for counsel who desire to entrap an unwary judge into forgetfulness of some obscure precedent, or to save a cause for a new trial by quibbling, on appeal, over the verbal propriety of form of words uttered or declined to be uttered by the judge. The effort to perpetuate and develop these elaborate unserviceable definitions is a useless one, and serves to-day chiefly to aid the purposes of the tactician. It should be abandoned . . . ."

I am more concerned about the future development of the rule herein announced than I am about the results of this case. I know not how far the Court intends to go in connection with requiring the law officer of a general court and the president of a special court to define words and phrases. It may be that by a case method we can find a good stopping point although that is most difficult once the floodgates are down. Other courts have been able to do so but under more favorable circumstances. Assuming such is possible, I had hoped that it would not be required and that we would not build a system where it is profitable for an accused to submit a great variety of instructions covering every conceivable subject to the law officer in the hopes that one refusal might be grounds for reversal. Because this is a big step in that direction, I do not join with my associates in a reversal.