UNITED STATES, Appellee
v.
EUGENE R. WALTERS, Private E-1, U. S. ARMY, Appellant
3 USCMA 732, 14 CMR 150

No. 3449

Decided February 12, 1954

CAPT William C. Irby, Jr., U. S. Army, 1ST LT Wade J. Dahood, U. S. Army, and 1ST LT Robert C. Taylor, U. S. Army, for Appellant.

LT COL Paul J. Leahy, U. S. Army, for Appellee.

## Opinion of the Court

PAUL W. BROSMAN, Judge:

The accused's petition for review was granted to permit consideration by this Court of the correctness of instructions supplied by the law officer to the general court-martial which found the former guilty of two offenses of wrongful appropriation and of an extended absence without proper authority. The instructions now questioned are identical to those set forth in United States v. Biesak, 3 USCMA 714, 14 CMR 132.

### II

We conclude that the law officer's charge, with its reference to "evidence supplied by the presumption of sanity," was, at worst, inartfully phrased—the confusion resulting chiefly from the bifurcated use of the term "presump-

tion" found in the Manual for Courts-Martial, United States, 1951. See United States v. Biesak, supra. The defense counsel at the trial level having offered neither objection to the instructions furnished, nor a request for clarification, we are sure that no error was generated for the consideration of this Court. United States v. Biesak, supra; United States v. Johnson, 3 USCMA 725, 14 CMR 143; United States v. Phillips, 3 USCMA 137, 11 CMR 137.

### III

The development of accused's defense of insanity and its consideration by the court occupied the first portion of the record of this lengthy trial. Initially the law officer determined this issue adversely to the position of accused, and his ruling was upheld by the court-mar-

tial, following objection by one of its members. The criteria for determining insanity were extensively presented to the court in appropriate instructions, and its finding of sanity was supported by the presumption of sanity, plus the opportunity to observe and evaluate the accused, together with extensive psychiatric testimony. Among the several expert witnesses who had concluded that the accused was wholly sane under legal tests was a Lt. Colonel Miller, "the consultant in psychiatry for the Surgeon General, European Theater." This medical officer had examined the accused at length shortly after the latter's return to military control from unauthorized absence in the Russian Zone of Germany. Another psychiatrist, Major Burkett, testified that the accused had been able to distinguish between right and wrong, and could adhere to the right, when examined by him somewhat before the commission of the offenses for which he has now been convicted.

Defense counsel moved for a continuance at the commencement of the hearing in order that he might have additional time for trial preparation, and also to await the arrival of records pertaining to the accused from the Veterans' Administration. By Appellate Exhibit 1, consisting of the matters advanced by the defense in support of its request for the continuance, and by Defense Exhibit X, it was shown that a Congressional inquiry originally brought to the attention of The Judge Advocate General, United States Army, the fact that the accused had once obtained a 50 per cent disability allowance on the ground of "psychoneurosis, Mixed Type, Anxiety and Hysteria." This fact was communicated promptly to the convening authority and properly to defense counsel as well. Thereafter, as evidenced by documents, which constitute a part of Appellate Exhibit 1, the defense had attempted to secure relevant files from the Veterans' Administration. The law officer granted a continuance of one week on the ground that the accused was "not prepared for trial." However, he specifically denied the motion insofar as it was based on the failure of records from the Vet-

**734**

erans' Administration to arrive. This ruling was preceded by the following comment:

"What the records of the Veterans' Administration show at some time previous to February 2nd, 1952 [the date of the first offense alleged], I don't think this court is concerned with."

When the court reconvened, the law officer denied a defense request for further delay based on the continuing absence of documents from the Veterans' Administration.

As to the denial of the second motion for continuance, we see no basis for a finding of abuse of discretion on the part of the law officer. Defense Exhibit A consisted of a copy of a Veterans' Administration examination and discharge report in the case of one Eugene Walters, and bears the case number adverted to in telegraphic communications relating to the accused's records. This report on its face was quite extensive, and, according to Lt. Colonel Miller—whose testimony referred to it frequently—seemed much more than a reduced summary. There was no sort of showing by the defense that the Veterans' Administration possessed additional records relating to the mental condition of the accused as of 1946, when he was discharged from a veterans' hospital. However, if it can be shown, in accordance with the provisions of Article 73, that the records of the Veterans' Administration contain significant data pertaining to the accused's mental condition—as distinguished from mere repetitions of items contained in Defense Exhibit A—the remedy of a motion for a new trial would doubtless be available to him.

Implicit in our view concerning the rejected request for continuance is an attitude of complete disagreement with the conclusion of the law officer that Veterans' Administration records relating to dates prior to that of the first alleged offense could not be the subject of concern by the court-martial. We have emphasized elsewhere that once a permanent condition of insan-

ity is shown to exist, its continuance may properly be inferred. United States v. Johnson, supra. Accordingly, testimony relating to an accused's mental status as of a date prior to the commission of an offense is often highly relevant and generally admissible. However, we are sure that the law officer's misstatement here was deprived of harmful effect by other events at the trial. The psychiatric testimony dealt extensively with the mental history of the accused during his service in World War II—many years before the commission of the offense in suit. Additionally, the law officer freely admitted Defense Exhibit A, as well as much other documentary evidence, relating to the accused's mental condition at times considerably earlier than the date of the crimes now alleged. Thus, it was made manifest to court members that the law officer had retreated from his original and ill-chosen position. Finally any lingering remnant of prejudice was effectively removed by the instruction that members of the court should disregard any statement by the law officer which might indicate an opinion as to the guilt or innocence of the accused. In concluding, we must note appropriately that our scrutiny of the record of trial of this case reveals extraordinarily close attention to and understanding of the complex testimony presented—which, together with his acquittal of numerous serious offenses, apparently prompted the accused at the end of the hearing to thank the court for its "fair-mindedness and openness and attentiveness throughout the trial."

### IV

Having found no error, we must necessarily affirm the decision of the board of review.

Chief Judge QUINN and Judge LATIMER concur.