UNITED STATES, Appellee

v

FRED A. KLOH, Private E–2, and ROBERT W. NEELY, Private E–1, U. S. Army, Appellants

10 USCMA 329, 27 CMR 403

No. 12,324

Decided April 10, 1959

*First Lieutenant James G. Garner* (counsel for accused, Neely) argued the cause for Appellants, Accused. With him on the brief were *Major Edward Fenig* (counsel for accused, Neely) and *Captain Arnold I. Melnick* (counsel for accused, Kloh).

*First Lieutenant Avram G. Hammer* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel James G. McConaughy, Major Thomas J. Nichols,* and *First Lieutenant Edward J. Lee.*

## Opinion of the Court

GEORGE W. LATIMER, Judge:

Few words or phrases in the law have been the subject of more comment, discussion, explanation, and prolix lament than the term "reasonable doubt." Supreme Court justices and city magistrates alike have labored arduously to fix its meaning with certainty and precision, and legal scholars have questioned the advisability of attempting to define the term by paraphrase or circumlocution. Therefore, it is not without reason that we suggest law officers would be well advised not to expand their definition to include all the incomprehensible formulae found in the reported cases.

Accused are before us upon grant of their petition for review. They were tried jointly and convicted of the felony

murder of a German national and of two larcenies, in violation of the Uniform Code of Military Justice, Articles 118 and 121, 10 USC §§ 918 and 921, respectively. The convening authority approved and, after twice returning the case for different staff judge advocate reviews, the board of review reduced the findings of larceny to the lesser included offenses of wrongful appropriation. The findings and the sentence were otherwise affirmed.

Since the sole issue before us concerns the validity of a portion of the law officer's instructions to the court-martial on the subject of reasonable doubt, we need not detail the events prior to trial. Suffice it to say the accused pleaded guilty to unpremeditated murder, and the facts amply support the

330

findings affirmed. The instruction in question was given as part of a ten-page charge which is otherwise unchallenged at this level and to which neither objection nor request for clarification was entered by trial defense counsel. It is quoted in full below:

"Every accused in a criminal case is presumed to be innocent. This presumption of innocence attaches to the accused throughout the trial. The burden of proof is upon the Government to prove that the accused is guilty beyond a reasonable doubt. Unless the Government sustains this burden and proves beyond a reasonable doubt that the accused has committed every element of the offense of which he is charged, the court must find him not guilty. Proof beyond a reasonable doubt does not mean proof beyond any doubt whatsoever. It means proof to a moral certainty, and not necessarily to an absolute or a mathematical certainty. *By reasonable doubt, as its name implies, is meant a doubt based on reason; a doubt for which you can give a reason to yourself and not just any whimsical speculation or capricious conjecture. If, after an impartial comparison and consideration of all the evidence you can say to yourself that you are not satisfied of the accused's guilt, then you have a reasonable doubt.* On the other hand, if after such impartial comparison and consideration of all the evidence, you can truthfully and candidly say to yourself that you have an abiding conviction of the accused's guilt, such as you would be willing to act upon in the more weighty and important matters relating to your own affairs, then you have no reasonable doubt. In determining whether the Government has established the charges and specifications against the accused beyond a reasonable doubt, you will consider and weigh the testimony of all the witnesses who have testified before you, and all the circumstances under which the testimony has been introduced. You are the sole judges of the credibility of the witnesses. *The term 'reasonable doubt' means a doubt for which a good reason can be given in the light of all the evidence.* It means a doubt which is substantial, not merely shadowy. It does not mean a doubt which is merely capricious of [sic] speculative, nor is it a doubt born of reluctance on the part of a member of the court to perform an unpleasant duty, or a doubt arising out of sympathy for an accused, or out of anything other than a candid consideration of all the evidence presented." [Emphasis supplied.]

We emphasize certain language to indicate with greater particularity the ground for appellate defense counsel's thesis that the instruction placed a heavier burden of persuasion on the accused than on the Government. The contention is essentially two-pronged; first, the court should not have been told that a reasonable doubt was one for which a good reason could be given; and, second, they should have been told that their doubts and uncertainty could be generated by a *lack* of proof as well as the evidence before them.

While appellate defense counsel have cited a number of cases which, in varying degrees, offer some support for the assertions set forth above, we conclude that the merits of the case rest clearly with the Government. The first prong of appellate defense counsel's argument has been the subject of considerable discussion in Federal and state cases. Most frequently, when objection is taken by appellate courts to a definitive instruction on reasonable doubt which equates it with a doubt for which good reason can be given, the asserted error is said to spring from the possible fear of an inarticulate juror that he may be called upon to express and defend his doubt and the basis therefor. See Pettine v Territory of New Mexico, 201 Fed 489 (CA 8th Cir) (1912), and Judge Frank's dissent in United States v Farina, 184 F 2d 18 (CA 2d Cir) (1950). While this reasoning may hold a certain initial appeal, research convinces us that the weight of authority properly rejects this view, particularly when the definition is accompanied by further explanation as it was here. Judge Augustus N. Hand, writing the

majority opinion in United States v Farina, supra, commented:

". . . The appellants argue that the charge given might lead some juryman to suppose that he would be called upon to give his reason. This objection seems fanciful and has already been rejected by this court." [Citing Marshall v United States, 197 Fed 511, 512 (CA 2d Cir) (1912).]

See also Murphy v United States, 33 F 2d 896 (CA 2d Cir) (1929); Mansfield v United States, 76 F 2d 224 (CA 8th Cir) (1935); Bernstein v United States, 234 F 2d 475 (CA 5th Cir) (1956). In this same connection, as noted above, the law officer here qualified his definition as he used the phrase "a doubt for which you can give a reason to yourself." Common experience tells us that the average court member is unlikely to suppress doubt in his own mind simply because he must be able to provide himself with a reason for that doubt. And certainly if he personally has no reason to doubt that the Government has established the guilt of the accused, a member honestly performing his duties should convict. While the Government has a heavy burden of persuasion, it need not prove its case to a mathematical certainty, and court-martial members should not be told that the term reasonable doubt means a doubt not based on reason. If, as we believe, some reason should motivate a member in not being convinced, then the instruction does no more than permit him to make his own measurement, and it is fanciful to say he would hesitate to measure his beliefs by his own standards. Moreover, it seems to us that the law officer succinctly pointed out to members a proper method of rationalization when he stated:

". . . If, after an impartial comparison and consideration of all the evidence you can say to yourself that you are not satisfied of the accused's guilt, then you have a reasonable doubt. On the other hand, if after such impartial comparison and consideration of all the evidence, you can truthfully and candidly say to yourself that you have an abiding conviction of the accused's guilt, such as you would be willing to act upon in the more weighty and important matters relating to your own affairs, then you have no reasonable doubt."

The theory underlying the second prong of appellate defense counsel's argument is that the instruction failed to inform the court members that doubt could spring as properly from an absence of evidence as from its presence. We find little in law, logic, or common sense to commend this view. When the members of a court are instructed that they should weigh and consider the testimony of all the witnesses in arriving at their findings and that a reasonable doubt may arise from the evidence, they are necessarily being told to consider the lack or insufficiency of that same evidence. To judge sufficiency of the evidence to convict is, by any normal process of the intellect, to judge insufficiency. Certainly, a reasonable member could not listen to the instructions given by this law officer and reach a conclusion that a doubt could not be predicated on the failure of the Government to satisfy him beyond a reasonable doubt. The complete charge informed the court the accused were presumed to be innocent and directed that the members had to be convinced beyond a reasonable doubt by the evidence adduced in court before they could convict. Obviously, if the evidence was lacking in quantity or quality, a member would not be convinced. Stated somewhat differently, the instructions require the Government affirmatively to produce evidence of guilt. The weight has to be sufficient to convince a member beyond a reasonable doubt. If the weight was insufficient for that purpose, it could not help but leave the member unconvinced, for he would have no foundation to support a belief of guilt. This identical question has been a subject of discussion in a number of state cases, and the above reasoning has been held determinative. See particularly People v Del Cerro, 9 Cal App 764, 100 P 887 (1909), and Thomas v State, 129 Ga 419, 59 SE 246 (1907).

While appellate defense counsel's ar-

guments could be answered at greater length, we find such a course unnecessary, for a study of the instructions within their four corners convinces us that the court members were correctly charged on the meaning of "reasonable doubt." They were advised that proof of that degree meant proof "to a moral certainty" although not necessarily an absolute or mathematical certainty. They were also cautioned that reasonable doubt was absent in the mind of each member only if there was "an abiding conviction of the accused's guilt, such as . . . [he] would be willing to act upon in the more weighty and important matters relating to . . . [his] own affairs." Considering these explanations together with those already discussed, we have no hesitancy in concluding that the court was fully and fairly advised. Nor can we accept appellate defense counsel's argument that the court members were left without guidance to pick and choose between correct and incorrect standards. The various definitions and tests contained in the instruction were not presented to the court in the disjunctive as alternatives from which one was to be selected. Rather, they were combined to form one composite touchstone for the use of each member in weighing his personal evaluation of the evidence.

One other reason prompts us to affirm the decision of the board of review. Here again we are faced with an instruction which is attacked principally upon the ground that it lacks clarity and precision. On two occasions, the law officer interrogated defense counsel as to any objections they might have to the instructions given or as to their desires to submit additional requests. Each time, defense counsel responded there were no exceptions to be taken and no requests to be submitted. In line with our previous decisions, we hold that the defense having failed to request clarification or amplification cannot successfully question the instructions on these grounds on appeal. See United States v Felton, 2 USCMA 630, 10 CMR 128; United States v Phillips, 3 USCMA 137, 11 CMR 137. See also United States v Soukup, 2 USCMA 141, 7 CMR 17.

For the reasons stated herein, the decision of the board of review is affirmed.

Chief Judge QUINN concurs.

FERGUSON, Judge (concurring in the result) :

I concur in the result. I must dissociate myself from the view that where the defense fails to request clarification or amplification of instructions, it is precluded from raising an issue thereon on appeal.

The law officer is under a duty to give proper instructions to the court-martial. Certainly, counsel should be alert to aid him in the performance of that duty. However, in a case where incomplete, ambiguous, or erroneous instructions are given to the court-martial, which might prejudice the substantial rights of the accused, this Court should stand ready to grant relief whether or not defense counsel took issue with the language of the instructions at trial. This does not mean that a guilty accused will go unpunished because of instructional error but, by granting him a rehearing where he may be tried before a court-martial acting under proper instructions, it will give practical effect to the accused's right to a fair trial.

I should also mention that the authorities noted by the majority do not, in my view, support the broad proposition for which they are cited. United States v Soukup, 2 USCMA 141, 7 CMR 17, was concerned with the failure of the law officer to define "reasonable doubt" and "willfully." We held simply that such failure in the absence of a request for a definition did not constitute reversible error. In other words, the law officer is not required *sua sponte* to define those terms. United States v Felton, 2 USCMA 630, 10 CMR 128, goes no further. It merely applies the holding of *Soukup*, supra, to a case where the law officer failed to define "premeditation" and "culpable negligence." In United States v Phillips, 3 USCMA 137, 11 CMR 137, the holding was to the ef-

fect that it was not reversible error to fail to define words of common usage used in instructions in the absence of a request by defense counsel. There, the Court said in part:

"... If further clarification of instructions is desired, the burden is upon the defense to bring it to the attention of the law officer. *It is only when the court-martial would not be adequately and properly informed on the elements of an offense that a duty falls upon the law officer to define words and phrases and here such was not the case.*" [Emphasis supplied.]

"Clarification or amplification of instructions" used in the cited cases, in the light of their holdings and in context, means that if defense counsel wanted clarification or amplification of an instruction *by having words or terms of common usage defined,* he should request a definition thereof. It does not mean that once a definition is given it will be forever free from attack unless defense counsel immediately objects to the language used. To me, there is a clear distinction between a question of whether the law officer *sua sponte* must define certain terms and the proposition that when he does undertake to define them, the definition must state the law correctly.