UNITED STATES, Appellee

v.

JOHN M. SHEPARD, Private, U. S. Army, Appellant

1 USCMA 487, 4 CMR 79

</div>

No. 343

Decided July 25, 1952

LT. COL. George M. Thorpe, U. S. Army, and 1ST LT. Michael E. McGarvey, U. S. Army, for Appellant.

LT. COL. Thayer Chapman, U. S. Army, and 1ST LT. Eugene L. Grimm, U. S. Army, for Appellee.

## Opinion of the Court

GEORGE W. LATIMER, Judge:

Accused was charged with desertion in violation of Article of War 58, 10 USC § 1530; robbery in violation of Article of War 93, 10 USC § 1565; stealing a Government vehicle, and the unlawful sale thereof, both in violation of Article of War 94, 10 USC § 1566; impersonating an officer, false preparation of official orders under two specifications, and possessing false official orders with intent to defraud in violation of Article of War 96, 10 USC § 1568. The offenses grew out of an unauthorized absence of approximately 90 days and the criminal activities of the accused during that period. A plea of not guilty to all charges and specifications was entered, but after a trial on the merits accused was found guilty on all specifications. He was sentenced to be dishonorably discharged from the service, to forfeit all pay and allowances to become due after the date of the order directing execution of the sentence, and to be confined at hard labor for 30 years. The sentence was approved by the convening authority

and the board of review approved, except that the period of confinement was reduced from 30 to 25 years.

Accused brought this case before us on petition pursuant to the Uniform Code of Military Justice, Article 67(b), 50 USC § 654. Because of the lack of merits on other contentions we limited review to a determination of whether the instructions given by the law officer as to the elements of the offenses charged were erroneous and prejudicial to the substantial rights of the accused.

We relate some of the events which led up to this prosecution to bring into focus the relationship of the instructions to the evidence. On December 1, 1950, the accused with a companion absented himself without authority from his organization, which was about 30 miles northeast of Pyongyang in the town of Yul-li, Korea. On the 27th of March 1951, they were apprehended in Pusan under the following circumstances: Two policemen entered a tearoom and asked the accused for his pass. He retorted that he was a 2d lieutenant and his blouse on the next table had 2d lieutenant bars on its shoulders. When asked for his AGO card, he stated that he had lost his identifying papers. One of his apprehenders then asked him if he had orders covering himself. In answer to this question he produced two admittedly false orders, one allegedly from the headquarters of his unit, placing him on 30-day temporary duty at Pusan, and the other from another headquarters, authorizing him the privilege of a permanent pass in and around that city. Unconvinced, the military policemen directed accused to accompany them to headquarters. The accused, a companion and the two military policemen left the tearoom and when their route took them past a special service theater, accused stated that he wished to leave a message for an Air Force captain and was permitted to go inside. Five minutes later he reappeared and the party continued on its way. However, when about two blocks from the provost marshal's office, accused pulled out a gun which he used to cover the two military

policemen, saying, "This is as far as we are going." He then told his companion to relieve the policemen of their side arms and when this was done the two offenders ran up a side street. A Korean policeman, observing the incident, acquired two carbines which he furnished the military policemen who followed and apprehended the accused and his partner.

To complete the facts concerning the offenses for which the accused was tried we must go back to the first day of March 1951, 27 days prior to the time accused was apprehended. On that day a Criminal Investigation Division agent drove a one-quarter ton Army vehicle to the home of his interpreter in Pusan. He entered the house and when he reappeared 10 minutes later the truck was missing. Four days later, while traveling along the streets in Pusan, he noticed a vehicle which appeared to have been reconstructed from parts of his truck. He interrogated the Korean driver who informed him that the truck was owned by a Korean named Kim. Going to Kim's residence, he found parts of his vehicle hidden under the house and it was subsequently determined that Kim had given a Korean one million won, which was paid to the accused for the purchase of the truck.

The accused executed a written pretrial statement and the first part is substantially as follows: At some time in the latter part of November 1950, he and a companion left their unit and went absent without leave. At that time he only intended to remain absent for a period of approximately one month as he needed money to pay his way through college and he intended to carry on activities outside the Army for this purpose. His plan was to accumulate money by any method, legal or illegal, and he carried on extensive operations of stealing and selling Government equipment. During his period of absence he concealed his identity by false orders and the wearing of an officer's uniform.

In the second part of his pretrial statement the accused explained his go-

**489**

ing absent by relating that he and a companion were on guard duty and were captured by four North Korean communists; that they remained in custody of the North Koreans for the period of about three or four days, after which they escaped; that when they gained their freedom they went to Pyongyang and there apparently stole a jeep to drive to South Korea.

When sworn as a witness accused testified to substantially the same state of facts on direct examination, but admitted on cross-examination that the duty of his unit was to protect the rear supply lines; that it was located some 200 to 300 miles in the rear of the front lines, was not in contact with the enemy; that on the night in question he was on guard duty from 8 to 12 o'clock p. m.; that after being relieved he and his buddy went to investigate a disturbance near the command post; that this was the place where he was taken prisoner; that after escaping he concluded to spend a period of time in Seoul to make money and then return to his organization, but he became involved in circumstances which prolonged his delay; and that there were American Army units in that vicinity moving south to which he could have reported.

The specification with respect to desertion reads as follows:

"In that Private John M. Shepard, Company "I" (Perm Party) 187th Airborne Infantry Regiment did, at Pyongyang, Korea, on or about 1 December 1950, desert the services of the United States and did remain absent in desertion until he was apprehended at Pusan, Korea, on or about 27 March 1951."

The law officer, in instructing the court, followed the wording of the Manual for Courts-Martial, U. S. Army, 1949, and informed the court as follows:

"With respect to the proof, proof required: '(a) That the accused absented himself without leave, or remained absent without leave from his place of service, organization, or place of duty, as alleged; (b) that he intended at the time of absenting himself or at some time during his absence, to remain away permanently from such place, or to avoid hazardous duty, or to shirk important service as alleged; (c) that his absence was of a duration and was terminated as alleged; and (d) that the desertion was committed under the circumstances alleged.'"

This is the same general instruction condemned by this Court in United States v. Williams, 1 USCMA 186, decided February 21, 1952, and United States v. Hemp, 1 USCMA 280, decided April 8, 1952. Accordingly, the question in issue concerns whether it was prejudicial.

Considering the facts in this case we fail to see how, or in what way, the court could have been reasonably misled by that portion of the instruction relative to an intent to avoid hazardous duty. The Government, to establish its case, relied largely on much prolonged absence plus other well-known factors which indicate an intent not to return to the service. All evidence concerning hazardous duty came from accused's uncorroborated story. But, even he admits that his unit was some 200 to 300 miles to the rear, not in contact with the enemy, and that he had every opportunity to return to the service after his escape from the communists. If the court-martial accepted this version of his story it would only change the date of the inception of his absence. Assuming he had been captured by North Koreans, he voluntarily absented himself after he returned to a location where he could reasonably have turned himself in to an American unit. By his own admission he established his reason for not doing so was to make money by engaging in activities entirely divorced from the military. Furthermore, his period of captivity was short and apparently when he elected not to return he was in a position of relative safety as he carried on his unlawful activities over a considerable period of time without interference by the enemy.

If the court did not believe accused's

story concerning his capture but accepted his other reason for going absent, then he likewise departed from his unit for the purpose of accumulating money by criminal means and not because he intended to avoid hazardous duty. Moreover, if the court-martial disbelieved his entire testimony concerning his reasons for going absent, there is no factual basis for inferring any mental state other than an intent to shirk important service or to desert the service permanently.

The prejudicial effect of that portion of the instruction which permits the members of the court to return a finding of guilty if they found intent to shirk important service poses a different question. The accused belonged to a combat unit, which was assigned the mission of guarding the supply lines. If these lines are not maintained the flow of ammunition, rations, supplies and replacement parts forward might be seriously retarded. It is essential that forward fighting elements be adequately supplied; and, while the duties of enlisted men charged with guarding the lines of communication do not necessarily involve hazardous duty, it must and would be considered important service. Going absent while detailed as such would probably be considered by a court-martial as seeking to shirk an important assignment.

A fair evaluation of the facts leaves an inference of intent to avoid hazardous duty without foundation in fact, while a substantial base for an inference of an intent to remain away permanently is found in 117 days' absence, apprehension, concealed identity, criminal proclivities and an announced purpose to hide from the military and remain away from the service to accumulate wealth; and a firm support for an inference of an intent to shirk important service is found in the nature and importance of accused's duties at the time he departed. There is no reason to speculate that the court-martial might conjecture upon an intent to avoid hazardous duty, but there is a fair probability that the other two intents might reasonably be considered. At least a substantial predicate for both is pres-

ent and we are not prepared to say that evidence of one so preponderates over the other that a member of the court-martial could not reasonably base a finding on either. We, therefore, conclude that the error in the instruction was prejudicial to the substantial rights of the accused.

The second assignment of error is based on the claim that the law officer improperly instructed the court-martial on the elements of the offense of robbery. The specific contention is that the law officer confused instructions on larceny and robbery and failed to indicate clearly all the essential elements of the latter. Because of the manner in which the two instructions were tied together, little value would be realized from setting them forth in haec verba. However, a fair reading of the two shows that every element of the offense was given correctly. While it may be conceded that reference is made to both offenses, and one instruction is related to the other, the instructions must be interpreted together and when this is done there is neither confusion nor insufficiency.

With respect to the particular wording of the instruction on value, the law officer stated that it was not necessary to establish specific value. This statement was made to properly connect those elements of larceny, which had to do with the appropriation of the property and its value, with the crime of robbery. When consideration is given to the complete instructions read by the law officer, it is obvious that he was differentiating the two offenses and pointing out that, while specific value need not be present to establish robbery, the articles taken must have some value. Certainly, there could be no uncertainty about the proof showing some value as the property taken was two .45 calibre service pistols. The instruction, while not a model of clarity, was not incorrect, confusing, nor misleading. This assignment of error is therefore overruled.

The accused next contends that the law officer erred in failing to instruct on the offenses alleged in the specifi-

cations under Charge III. These offenses consisted of the stealing of the truck and its subsequent sale. Under military procedure the stealing and selling of Government property may be charged as separate offenses. This was the procedure followed in this case and the accused was convicted of both offenses. The record ▉▉▉▉▉▉ ▉ discloses that the law officer gave appropriate instructions on the theft but neglected to give any instructions on the sale. Under our holding in the case of United States v. Clay, 1 USCMA 74, decided November 27, 1951, it is prejudicial error not to instruct on the essential elements of an offense and the conviction on the second specification of this charge must be reversed.

Finally, appellant contends that the specification under Charge IV, alleging the crimes of impersonating an officer, preparing and possessing false official orders, contain words of art which were left undefined, with the result that the court-martial was not fully and fairly instructed on all essential matters. We have reviewed this argument and consider it without merit. The law officer properly set forth the essential elements of the offense and in so doing used certain forms which accused claims needed to be defined. The words used in the instruction were not technical and would be generally understood by members of the court-martial. Words generally known and in universal use do not need ▉▉▉▉▉▉ ▉ judicial definition. Hence, failure to define does not constitute prejudicial error.

Because of our reversal on two specifications, we return this case to the board of review for further consideration. The evidence is conclusive that accused is guilty under Charge I of absence without leave and the findings of guilty on this included offense and on the other charges and specifications more than adequately support the sentence as imposed. However, desertion is considered more heinous than absence without leave and conviction for the sale of the truck permitted the court-martial to consider one additional period of five years imprisonment. We are not in a position to know whether the finding of guilty on these particular offenses had any substantial effect on the members of the court-martial when they imposed sentence, and the board of review when it affirmed; but we cannot hold that they did not in some degree influence the severity of the approved sentence. The board of review has been given the power and authority to approve so much of the sentence as it finds correct in law and fact and determines, on the basis of the entire record, should be approved. See Article 66, Uniform Code of Military Justice, 50 USC § 653, and United States v. Keith, 1 USCMA 442, decided July 3, 1952.

Accordingly, the record is remanded to The Judge Advocate General of the Army for reference to the board of review for reconsideration of the sentence in the light of our holding herein.

Chief Judge QUINN and Judge BROSMAN concur.