UNITED STATES, Appellee

v

JAMES H. POTTER, Airman Third Class,
U. S. Air Force, Appellant

15 USCMA 271, 35 CMR 243

No. 18,168

March 19, 1965

Major James E. Caulfield argued the cause for Appellant, Accused. With him on the brief was Colonel Robert O. Rollman.

Lieutenant Colonel Robert M. Haynes argued the cause for Appellee, United States. With him on the brief was Colonel Emanuel Lewis.

## Opinion of the Court

FERGUSON, Judge:

Tried before a general court-martial convened at Travis Air Force Base, California, the accused was found guilty of two specifications of wrongful and willful discharge of a firearm under circumstances such as to endanger human life, in violation of Uniform Code of Military Justice, Article 134, 10 USC § 934. He was sentenced to bad-conduct discharge, forfeiture of all pay and allowances, confinement at hard labor for two years, and reduction to Airman Basic. The convening authority approved the sentence. The board of review found the evidence insufficient to convince it beyond a reasonable doubt that accused's discharge of a firearm, as alleged in specification 1 of the Charge, was willful and, as to this offense, affirmed only findings of guilty of careless discharge of the weapon. However, it approved the findings of guilty of specification 2 as returned by the court-martial, the adjudged bad-conduct discharge, forfeitures, and reduction, but reduced the term of confinement imposed to one year and three months. We granted accused's petition for review upon the following issues:

"A. AS TO SPECIFICATION 2 OF THE CHARGE THERE IS INSUFFICIENT EVIDENCE IN LAW TO PROVE THAT HUMAN LIFE WAS ENDANGERED BY THE ALLEGED DISCHARGE OF A FIREARM BY THE ACCUSED.

"B. THE LAW OFFICER COMMITTED PREJUDICIAL ERROR IN DENYING THE ACCUSED'S REQUEST FOR AN INSTRUCTION THAT THE TERM 'UNDER CIRCUMSTANCES AS TO ENDANGER HUMAN LIFE' IMPORTS CIRCUMSTANCES WHERE HUMAN LIFE IS IN FACT PRESENT AND IN FACT ENDANGERED, AS DISTINGUISHED FROM CIRCUMSTANCES WHERE THERE IS A MERE HYPOTHETICAL LIKELIHOOD OF DANGER TO HUMAN LIFE WHEN IN FACT THERE WAS NONE."

### I

On March 11, 1964, accused became involved in an altercation with an Airman McDowell while both were eating their evening meal at Mess Hall No. 3, Travis Air Force Base, California. Potter poured a glass of milk on McDowell's head, as he was leaving the table. McDowell retaliated by hurling a glass at Potter, which caused the latter to suffer a cut on his cheek. Potter left the mess hall, followed by McDowell, who proceeded to his room, cleaned up, and reported for duty.

Potter obtained a pistol and, apparently seeking McDowell, returned to the mess hall, which was still occupied by a number of airmen. There, in the dining area, he fired a shot into the floor which ricocheted into an asbestos covered pipe near the building's ceiling. It was this shot which the board of review concluded to have been carelessly discharged.

Unable to find McDowell in the mess hall, accused, accompanied by Airman Carrethers, then proceeded to his intended victim's barracks. There, he made several unsuccessful attempts to enter McDowell's room and, finally, with Carrethers standing near him, fired five shots through its door. All the missiles passed completely through the portal, four eventually coming to rest in the room, and the fifth passing through the chamber's screened window in the direction of a vehicular parking lot behind the barracks. It is these shots which form the basis for accused's conviction of willful discharge of a firearm in specification 2 of the Charge.

### II

As McDowell's room was admittedly empty when accused fired his volley through the door and there was no showing at the trial that anyone was in the parking lot or area who was actually endangered by the barracks shooting, the defense urges the evidence is insufficient in law to support the finding by the court-martial that the shooting took place "under circumstances such as to endanger human life." In like manner, it objects to the refusal of the law officer to advise the court-martial that actual danger to human life from the accused's dis-

272

charge of the weapon was an essential part of the proof of his guilt, as opposed to a potentiality for harm from the shooting. The two issues are so intertwined that our answer to the instructional question will necessarily dispose of the case, for, on the facts presented, there can be no doubt that the multiple firing of a pistol through the door of a barracks room, it not being known to be unoccupied, presents such a reasonable potential for harm to human life that, if such be the standard, accused's guilt would be fully established.

The precise issue is one of first impression in this Court. While we have heretofore considered the offense charged, it has normally involved circumstances under which actual danger to human life was demonstrated. Thus, in United States v Simmons, 1 USCMA 691, 5 CMR 119, we found the evidence established the accused fired his carbine into the ground, but in the presence of other soldiers. Even then, however, we noted the "fact that he fired the shot with the weapon pointed towards the ground does not dispose [of] the potential danger to the other soldiers present." Boards of review similarly have considered cases which have involved willful discharge of weapons toward or in the presence of others. United States v McMains, 9 CMR 338; United States v Ostman, 6 CMR 144. But that is not to say that actual danger to specific human lives as opposed to the reasonable possibility of harm to human lives in general is the correct standard of determining an accused's guilt or innocence of this offense.

Thus, in United States v Christey, 6 CMR 379, wherein the evidence established a burst of firing by the accused across a Main Supply Route, an Army board of review concluded the proof sufficient to establish the weapon's discharge was under such circumstances as to endanger human life, although no actual peril to any specific person was demonstrated. See also United States v Ostman, supra (firing in squad tent area), and United States v Younger, 13 CMR 225 (firing near a Korean house). But see United States v Manning, WC NCM 63–00516 (unpublished), decided July 19, 1963, holding that firing a pistol in a barracks for "target practice" did not constitute the offense.

We are convinced that the view impliedly expressed in *Christey* and *Younger*, both supra, *i.e.*, that "under circumstances such as to endanger human life" refers to a reasonable potentiality for harm to human beings in general, is the proper standard to be applied in measuring an accused's guilt of such misconduct. It is to be recalled that we deal here not with a specific crime as such but with misconduct violative of the general Article, that is, acts which are directly prejudicial to good order and discipline in the armed forces and which tend to reflect discredit upon them. Code, supra, Article 134; United States v Simmons, supra; United States v Snyder, 1 USCMA 423, 4 CMR 15. We have recognized the obvious availability of weapons—legitimately or otherwise—to members of the armed services at their places of duty. United States v Smith, 8 USCMA 400, 24 CMR 210; United States v Lowe, 4 USCMA 654, 16 CMR 228. To say their indiscriminate discharge is not conduct directly prejudicial to good order and discipline unless human life is actually endangered is to ignore the realities of the situation and the dangers which would flow from their being fired in the thickly inhabited complexes which make up our modern military installations. Enforcement of military order and discipline is not so narrowly bound that the Government need prove actual danger to human life in order to punish wrongful discharge of firearms. Military barracks are not to be converted into unofficial ranges and their inhabitants required to undergo the risk of falling victim to stray bullets unless actual risk is shown.[1] The correct standard

[1] Similar considerations of risks involved undoubtedly led to enactment, in civil communities, of familiar ordinances barring discharge of firearms, *per se*, within corporate limits. Cf. Cottonwood Falls v Smith, 36 Kan 401,

is, as alleged and proven here, "under circumstances such as to endanger human life," that is, not that such life was in fact endangered, but that, from the circumstances surrounding the wrongful discharge of the weapon, it may be fairly inferred that the act was unsafe to human life in general.

We conclude, therefore, the law officer did not err in refusing to grant

13 P 576 (1887); Town of Ocean Springs v Green, 77 Miss 472, 27 So 743 (1900).

the instruction requested by the defense counsel. Necessarily, we also find the accused's admittedly willful and multiple discharge of his pistol through the door of the barracks room, under the conditions here presented, was a firing "under circumstances such as to endanger human life."

The decision of the board of review is, accordingly, affirmed.

Chief Judge QUINN and Judge KILDAY concur.