## UNITED STATES, Appellee

v

## PAUL G. J. DARISSE, Airman Third Class, U. S. Air Force, Appellant

## 17 USCMA 29, 37 CMR 293

### No. 19,850

### May 5, 1967

*Major Frank W. Lane, Jr.,* argued the cause for Appellant, Accused. With him on the brief was *Colonel Joseph Buchta.*

*Lieutenant Colonel Thomas J. Connolly* argued the cause for Appellee, United States. With him on the brief was *Colonel Emanuel Lewis.*

### Opinion of the Court

QUINN, Chief Judge:

This is an appeal from a conviction by a special court-martial for wrongfully and willfully discharging a revolver under circumstances as to endanger human life, in violation of Article 134, Uniform Code of Military Justice, 10 USC 934. The accused contends he was prejudiced by an alleged deficiency in the instructions on the lesser offense of careless discharge of a firearm.

At trial, substantial evidence was presented from which it could be concluded beyond a reasonable doubt that, while posted as a guard in an area in which loaded aircraft tankers were in an alert status, the accused, contrary to specific instructions, drew his revolver and deliberately fired a shot. It was stipulated the circumstances were such that the shot could have endangered human life. See United States v Potter, 15 USCMA 271, 35 CMR 243.

**29**

In defense, the accused testified he drew the gun from his holster, and began "to fidget and play with it." He admitted the weapon discharged, but he maintained he was trying to "holster" it when it went off. He said he did not "remember cocking the weapon" and "it seemed like . . . [he] hadn't even touched the trigger."

Apparently, the instructions were prepared by trial counsel, and were submitted to defense counsel for his inspection before they were tendered to the president of the court. Defense counsel advised the president he had "no objections to these instructions" and had "no additional instructions to offer." After the president orally gave the instructions to the court members, defense counsel again indicated he had "no objections or additional instructions."

In material part, the instructions apprised the court members of the elements of the offense charged and advised them that the term " 'willfully' " meant "intentionally, knowingly, and purposely, as distinguished from . . . carelessly, thoughtlessly or inadvertently." The members were also instructed that included within the offense charged was the lesser offense of "discharge of a firearm through carelessness." The elements of this offense were separately stated and included the following: "That the discharge . . . [of the revolver] was caused by the carelessness of the accused." The term "carelessness" was not specially defined. The accused now contends the absence of further definition left the court members without adequate guidelines to determine intelligently whether he had committed the lesser offense. See United States v Smith, 13 UCMA 471, 474, 33 CMR 3.

Essentially, the accused's argument consists of equating the word "carelessness" with the word "negligence." See Black's Law Dictionary, 4th ed, page 268. With the equation established, he contends that negligence must be defined if the triers of the facts are to know the standard of care the law demands of the individual as a condition to liability; therefore, "carelessness" must be similarly defined. See

A–F Corporation v Caporaletti, 240 F2d 53 (CA DC Cir) (1957); cf. United States v Ritcheson, 3 CMR 759.

Negligence is indeed a synonym for carelessness, but the two are not necessarily equivalents in common understanding. In some circumstances, negligence may perhaps have an overlay of technical legal significance, but carelessness does not. It is a word "readily understood by men of ordinary intelligence." State v Hayes, 244 Minn 296, 70 NW2d 110, 113 (1955). It is a commonplace word of common understanding that is not susceptible of different meanings in different situations. See Byas v United States, 182 F2d 94, 96 (CA DC Cir) (1950).

As early as United States v Shepard, 1 USCMA 487, 492, 4 CMR 79, we held that words "generally known and in universal use do not need judicial definition." In the absence of a defense request for further definition, we have consistently refused to strike down instructions that do not define a word of common usage and common understanding. United States v Eagleson, 3 USCMA 685, 689, 14 CMR 103; United States v McDonald, 6 USCMA 575, 20 CMR 291; see also United States v Kloh, 10 USCMA 329, 27 CMR 403, opinion by Judge Ferguson. Civilian courts have followed the same course in similar situations. Byas v United States, supra; Thompson v United States, 272 F2d 919 (CA 5th Cir) (1959). As we have already noted, there was no request, by qualified counsel, for an additional explanation of the meaning of "carelessness." The instructions given differentiated clearly between the willfulness required for a finding of guilty of the offense charged, and the "carelessness" required for a finding of guilty of the lesser offense. We are satisfied that the offense charged and the lesser offense were presented to the court members in meaningful terms.

The decision of the board of review is affirmed.

Judge KILDAY concurs.

FERGUSON, Judge (dissenting):

I dissent.

It is the duty of a law officer of a general court-martial or the president of a special court-martial to instruct, *sua sponte,* on the elements of all lesser included offenses placed in issue by the evidence. United States v Clark, 1 USCMA 201, 2 CMR 107; United States v Wilson, 7 USCMA 713, 23 CMR 177; United States v Bellamy, 15 USCMA 617, 36 CMR 115; United States v Flippen, 16 USCMA 622, 37 CMR 242. In addition, an accused "is entitled to have presented instructions relating to any defense theory for which there is any foundation in the evidence." United States v Amie, 7 USCMA 514, 518, 22 CMR 304; United States v Sitren, 16 USCMA 321, 36 CMR 477; United States v Flippen, supra. When, as in this case, the term "carelessness" was not defined by the president in his instructions, there was no meaningful submission of the lesser included offense of careless discharge of a firearm to the court-martial. In consequence, there was a violation of his *sua sponte* duty to instruct. Accordingly, I am of the view that prejudicial error is present here and, following the precedents we have heretofore laid down, cannot join in my brother's affirmance of accused's conviction.

We have no disagreement on the facts here. The accused was an armed guard performing security duty over aircraft maintained on an alert status. According to the Government's evidence, he, as charged, willfully fired his pistol under such circumstances as to endanger human life. According to accused's testimony, he was playing with his weapon and, while attempting to holster it, it was discharged under circumstances indicating neglect on his part. Thus, two possible choices were posited for the fact finders. The court could find, as it did, that Darisse deliberately fired his revolver as the Government contended, or that such occurred, as he testified, through negligence on his part.

The president instructed the court-martial on the elements of willfully discharging a firearm under such circumstances as to endanger human life. In connection therewith, he further advised it that " 'willfully' " was defined as acting "intentionally, knowingly, and purposely, as distinguished from . . . carelessly, thoughtlessly or inadvertently." Having thus carefully framed the issue with respect to the offense charged and the theory of the Government, he covered the essential point at issue with regard to the lesser included offense and the accused's evidence only by stating to the court, "That the [weapon's] discharge . . . was caused by the carelessness of the accused." Contrary to the manner in which he submitted the principal offense and the Government's position, no effort was made to delineate to the fact finders the standard by which they were to measure accused's conduct and determine whether in law he carelessly fired his weapon.

In the ordinary sense, the term "careless" means "Free from care; untroubled . . . [w]ithout care; as . . . [i]ndifferent; as, careless of results." Webster's New Collegiate Dictionary, 2d ed. In law, however, it is "[s]ynonymous with 'negligent,' the latter being probably the better word in pleadings." Black's Law Dictionary, 4th ed, page 268. It means the "[a]bsence of ordinary or proper care . . . [or] [r]eckless." *Id.,* page 268. In like manner, "carelessly" means "Negligently; denoting the absence of *ordinary care.*" (Emphasis supplied.) *Id.,* page 268. The following authorities fully support the proposition that liability based on careless conduct means liability predicated on negligence. Norfolk Beet-Sugar Co. v Preuner, 55 Neb 656, 75 NW 1097 (1898); Atchison, T. & S. F. Ry. Co. v Baker, 104 SW 1182 (CA Ind Terr) (1907); Hester v Ford, 221 Ala 592, 130 So 203 (1930); Pelfrey v Commonwealth, 247 Ky 484, 57 SW 2d 474 (1933); Flesh v Lindsay, 115 Mo 1, 21 SW 907 (1893); Delmore v Kansas City Hardwood Flooring Co., 90 Kan 29, 133 Pac 151 (1913); Murphy v Ossola, 124 Conn 366, 199 Atl 648 (1938); Horn v Southern Ry. 78 SC 67, 58 SE 963 (1907); State v Tamanaha, 46 Hawaii 245, 377 P2d 688 (1962); High v Supreme Lodge of the World, Loyal Order of Moose, 214 Minn 164, 7 NW2d 675 (1943); Mascott Coal Co. v Garrett, 156 Ala 290, 47 So 149 (1908); Southern Ry. Co. v Horine, 121 Ga 386,

49 SE 285 (1904); Turner v State, 65 Ga App 292, 16 SE2d 160 (1941); State v Jones, 152 Me 188, 126 A2d 273 (1956); Folds v City Council of Augusta, 40 Ga App 827, 151 SE 685 (1930); State v Meany, 262 Minn 491, 115 NW2d 247 (1962); State v Hayes, 244 Minn 296, 70 NW2d 110 (1955). Indeed, in Turner v Cross, 83 Tex 218, 18 SW 578 (1892), at page 582, it was pointed out that "negligence is but the omission of care, and the same is carelessness."

Moreover, in a criminal case, the synonmous terms "carelessness" and "negligence" must be defined to the jury in order that it can make a meaningful determination of the accused's guilt. Thus, in Pelfrey v Commonwealth, supra, the Court of Appeals of Kentucky, in reversing a homicide case, declared at page 476:

> "The court on another trial will instruct the jury on willful murder, voluntary manslaughter, and involuntary manslaughter; also on [sic] instruction authorizing an acquittal if the killing was accidental. . . .
>
> "*He will define the terms used in the instructions thus: . . . The word 'careless' means the absence of ordinary care, and 'ordinary care' means such care as an ordinarily prudent person would exercise for his own protection under circumstances similar to those described in this case.*" [Emphasis supplied.]

In like manner, in A–F Corporation v Caporaletti, 240 F2d 53 (CA DC Cir) (1957), the Court of Appeals reversed *per curiam* for failure of the trial judge to define negligence to the jury. It said, at page 54:

> ". . . But even if appellant be regarded as having failed to make a proper objection, we must nevertheless hold that some definition of what constituted negligence was essential. *The omission of a definition of negligence in a negligence case is so fundamental as to command our attention with or without objection.*" [Emphasis supplied.]

Indeed, as long ago as United States v Clark, supra, Judge Latimer pointed out for the Court the necessity of instructing the court on the standard to be applied in determining the existence of negligence in a criminal offense:

> ". . . There was no allegation in the charge as to any specific act of negligence and the finding returned is general in nature. Viewed from this level, the members of the court were permitted to operate in an open field and to make a finding without disclosing its foundation. Having such latitude, and without a contrary showing in the record, there is a reasonable possibility that they may have considered negligence as being something different from or less than what an appropriate instruction would have required. Such being the case, there is a reasonable showing that the substantial rights of the petitioner were prejudiced."

That the court must be informed of the proper degree of care by which to measure guilt is also emphasized by our opinions in United States v Torres-Diaz, 15 USCMA 472, 35 CMR 444, and United States v Pemberton, 16 USCMA 83, 36 CMR 239, wherein we reversed for the failure of the law officer to instruct properly regarding the defense of accident as being in conflict with the need to make out accused's assault through culpable negligence. And, interestingly enough, we pointed out in *Pemberton*, supra, at page 85, that even the term "fault" as used in the law officer's instructions "implies simple negligence."

The point made by these authorities is simply that "in a negligence case, . . . his [the judge's] charge must not be so general as to afford the jury no adequate assistance in fixing the standard of care that the circumstances may require." Ryan v United Parcel Service, 205 F2d 362, 365 (CA2d Cir) (1953). That is precisely what occurred here. The president went no further than to tell the court-martial it might find accused guilty if it concluded his weapon was discharged through "carelessness." Nothing was said about any standard by which it was to determine if the accused was, in fact, careless, although that term has been equat-

ed by almost all courts to the failure to use the care exercised by a reasonable man under the circumstances. Pelfrey v Commonwealth, supra. Instead of being held to the traditional and usual standard of negligence, each member was left to convict Darisse according to his own, unfettered belief as to what carelessness or negligence was. Such a situation is, as noted in A–F Corporation v Caporaletti, supra, an "omission . . . so fundamental as to command our attention with or without objection." It was, in my view, a failure to make any meaningful submission of one of the essential elements of the offense to the court and thus a violation of the *sua sponte* duty of the president to instruct on the elements of all lesser included offenses reasonably raised by the evidence.

Turning to the rationale of the principal opinion, I cannot agree that "carelessness" is a word of ordinary understanding which need not be defined to the court members. Instead, it is the essence of the alleged offense; the very basis on which guilt is to be predicated; and its ordinary dictionary meaning, as set out above, is by no means consistent with its legal synonym, "negligence." Nor does State v Hayes, supra, on which the Chief Judge relies to indicate it is a word "readily understood by men of ordinary intelligence," support in any way the proposition it need not be defined in the judge's instructions. To the contrary, that case equates "carelessness" with "negligence," but, in speaking of it being a word intelligible to men of ordinary intelligence, the court was dealing with a contention by the defendant that a statute using such terms was unconstitutionally vague. It is a far cry from holding words in a statute to be sufficiently definite and certain to avoid such an attack to the proposition that they have such clarity of meaning that a jury will immediately divine its duty to apply the standard of a reasonably

prudent person under the circumstances. See Pelfrey v Commonwealth, supra, and United States v Pemberton, supra.

Similarly, Byas v United States, 182 F2d 94 (CA DC Cir) (1950), is no authority for the proposition that a court need not be instructed on the meaning of words imposing a technical standard by which guilt is to be measured. The word there involved was "arrange" which, as the court pointed out, is "a common word in the lay vocabulary . . . [which] admits of no double *entendre* which casts an umbrage of legal nicety, beyond its ordinary meanings." *Id.*, at page 97. Unlike "arrange," however, "carelessness" has a double meaning—one for the layman, and a stricter definition in the law as being synonymous with lack of due care. Thus, rather than refuting the need for a definition here, Byas v United States, supra, would seem to indicate it was essential.

In sum, then, I find nothing in the principal opinion to support the proposition that the fact finders need not be provided with a definition of carelessness or negligence in order to have a standard by which to measure accused's conduct in determining his guilt. I find the authorities clearly to the contrary and believe they represent a sound view in thus requiring the jury to have a common understanding of the rod by which they are to make their findings. Otherwise, they are, in effect, uninstructed and left to predicate a verdict on a purely personal approach to the evidence. United States v Clark, supra. I cannot agree that a criminal case should be so tried. Accordingly, I register my dissent to my brother's views.

I would reverse the decision of the board of review and return the record with instructions either to affirm the lesser included offense of careless discharge of a firearm or to order a rehearing.