UNITED STATES, Appellee

v

FRANK DOUGLAS ADAMS, Sergeant,
U. S. Army, Appellant

18 USCMA 310, 40 CMR 22

Captain Norman L. Blumenfeld argued the cause for Appellant, Accused. With him on the brief were Colonel Daniel T. Ghent and Major David J. Passamaneck.

Captain Benjamin G. Porter argued the cause for Appellee, United States. With him on the brief were Lieutenant Colonel David Rarick, Major Edwin P. Wasinger, and Captain Joel P. Schiff.

## Opinion of the Court

QUINN, Chief Judge:

Among other specifications, the accused was convicted of two alleging violations of Article 134, Uniform Code of Military Justice, 10 USC § 934, in that he "did . . . wrongfully and unlawfully entice . . . [two named males] to engage in acts of prostitution with persons to be directed to them by" him. At trial, Government counsel described the offense as "pandering," and apparently defense counsel agreed with the description. No direct indication of the law officer's opinion appears in the record, but he instructed the court members that the maximum punishment for each specification included confinement at hard labor for five years, which is the period of confinement prescribed for pandering. Table of Maximum Punishments, paragraph 127c, Manual for Courts-Martial, United States, 1951, at page 226.

When the case was before the board of review, appellate defense counsel challenged the legality of the findings of guilty relating to the specifications in issue. The board of review determined the specifications were "poorly" drawn, but sufficient to "allege an offense under the Code." The offense was not characterized. The board of review also determined that the evidence did not support the allegations of one of the specifications (specification 5), so it reversed the findings of guilty

and dismissed that specification. We granted review to consider the correctness of the board of review's decision as to the other specification (specification 4).

A comparison of the allegations of the specification with model forms of specifications for pandering, set out in the Manual for Courts-Martial, demonstrates that the draftsman of the charge relied upon one of the forms, but inserted the names of the male customers in the space provided for the name of the female prostitute. See Appendix 6c, Form 156, at page 493. The result is that the specification alleges that the customers were the prostitutes for whom the accused acted as procurer. Appellate defense counsel contend that the specification is thus legally defective because, by common understanding, a prostitute is a female, and pandering involves enticement of a female, not a male, to engage in acts of prostitution. See Black's Law Dictionary, Revised Fourth Edition, at page 1265; State v Gardner, 174 Iowa 748, 156 NW 747 (1916). Certainly, the usual and common understanding of the word prostitution is "sexual relations for hire" by a female. Cleveland v United States, 329 US 14, 17, 91 L Ed 12, 67 S Ct 13 (1946); 42 Am Jur, Prostitution, § 1. Statutes on the subject of prostitution often use the word to mean a female engaged in

commercialized sex or indiscriminate sexual intercourse. State v Gardner, supra; Cole v State, 156 Ark 9, 245 SW 303 (1922); People v Rice, 277 Ill 521, 115 NE 631 (1917). However, we are not dealing with specialized statutes enacted in light of, or for, special purposes, but with conduct to the discredit of the armed forces or to the prejudice of good order and discipline, in violation of Article 134 of the Uniform Code. Under that Article, we sustained the legality of findings of gulity of an attempt to entice male persons " 'to engage in sexual intercourse with a female to be directed' " to them by the accused. United States v Snyder, 1 USCMA 423, 424, 4 CMR 15. Subsequently, we relied upon the rationale of *Snyder* to sustain the legal sufficiency of a specification alleging the accused enticed three enlisted men to engage in sexual intercourse with a prostitute. United States v Brown, 8 USCMA 255, 24 CMR 65; cf. United States v Gentry, 8 USCMA 14, 23 CMR 238. In *Snyder* and *Brown,* the conduct of the accused was limited to enticement of a serviceman to engage in a single act of sexual intercourse. The specification before us alleges enticement not merely to engage in one act of intercourse, but to participate in sexual intercourse in such number or under circumstances as to constitute "prostitution." A male, as well as a female, can lend his body for indiscriminate sexual intercourse or intercourse for hire. If he does, he is engaged in prostitution. In fact, one of the model forms of specification in the Manual for Courts-Martial contemplates that very situation. The concluding clause in Form 156, which was the apparent model for the specification here, contains an alternative allegation predicated upon the sex of the person induced or enticed into engaging in prostitution. It reads as follows: "with persons to be directed to (*him*) (*her*) by the said ———." (Emphasis supplied.) *Id.*, at page 493. That a male may qualify as a prostitute is also apparent from the dictionary definition of that word.

**312**

The nature of the misconduct described in Article 134, the form of specification set out in the Manual for Courts-Martial, and our decision in the *Snyder* and *Brown* cases, impel the conclusion that the specification before us is legally sufficient to state an offense. We are fully aware of the dramatic and drastic changes in overt sexual expression that have taken place in society in the decade following our decision in *Brown.* The theater, the movies, and the novel currently portray sexual intercourse with such specificity, and with such apparent public approval, as to suggest that the pandect of morals of the preceding centuries may perhaps need further gloss to measure aberrant sexual conduct under Article 134. Cf. United States v Wallace, 15 USCMA 650, 36 CMR 148. We are willing to assume that public indifference to the individual doing his "own thing" in the area of sexual relations is increasing, but we are not aware of, and we are not referred to, any evidence indicating a ground swell of public acceptance of commercialized copulation or intercourse so indiscriminate as to constitute prostitution. No cogent reason, therefore, justifies overturning precedent to hold, as a matter of law, that prostitution by a serviceman is not conduct to the discredit of the armed forces or conduct to the prejudice of good order and discipline.

As indicated earlier, in common usage prostitution contemplates an element of financial gain. That concept is included in the definition in the Army's manual of recommended instructions on the elements of stated offenses. Department of the Army Pamphlet No. 27–9, Military Justice Handbook: The Law Officer, April 1958, Instruction 156*a*, at page 118. However, in its literal sense prostitution is not limited to sexual intercourse for hire, but includes indiscriminate or promiscuous copulation with others. For example, the Supreme Court of the United States has observed that prostitution involves indiscriminate sexual intercourse "for hire or without hire." United States v Bitty, 208 US 393, 401, 52 L Ed 543,

28 S Ct 396 (1908). Similarly, the dictionary definition of prostitution emphasizes promiscuity with others, rather than payment, as the critical factor.[1] Whether the expanded or narrower meaning is intended, is frequently determined by the context or the circumstances in which the word is used. Lopez v State, 70 Tex Crim 71, 156 SW 217 (1913). As a result, the matter of gain may be central to its meaning or totally unnecessary. Compare State v Baldino, 11 NJ Super 158, 78 A2d 95 (1951), with State v Clark, 78 Iowa 492, 43 NW 273 (1889). Papers annexed to the Charge Sheet in this case plainly indicate the accused was involved in commercialized vice. So far as this circumstance ▆▆▆▆▆▆▆ provides insight into the intention of the draftsman of the specification, it would appear he used the word "prostitution" in the sense of sex for hire. The transcript of the out-of-court hearing on the instructions indicates the matter of definition was raised, but the law officer concluded it was unnecessary, and defense counsel agreed. Thus, the law officer instructed the court members on the elements of the offense only in the language of the specification, without telling the court members they must find that the intercourse was for hire. Since the usual and ordinary understanding of the term contemplates sex for hire, we are satisfied that the instructions covered the essential elements of the offense, without separate advice on the matter of financial gain. United States v Phillips, 3 USCMA 137, 11 CMR 137; see also United States v Darisse, 17 USCMA 29, 37 CMR 293.

Turning to the evidence, appellate defense counsel contend it is insufficient to establish that the accused enticed the servicemen named in the specification "to offer their bodies to promiscuous or indiscriminate sexual intercourse." The evidence does in fact indicate intercourse by each of the servicemen. The most that appears, however, is that each engaged in a single sexual act with a woman for which she received payment; and it cannot be concluded with any degree of assurance that each was involved with the same woman. The essence of an act of prostitution is indiscriminate ▆▆▆▆▆▆▆ sexual intercourse or sexual ▆▆▆▆▆▆▆ ual intercourse for the profit of the one who offers his or her body to another. State v Poague, 245 Minn 438, 72 NW2d 620 (1955). Fornication is not prostitution. United States v Zes Cloya, 35 Fed 493, 494 (SD Ala) (1888); State v Brow, 64 NH 577, 15 Atl 216 (1888); Commonwealth v Lavery, 247 Pa 139, 93 Atl 276 (1915). Since we have determined that the specification required sexual intercourse for hire, the Government was obliged to prove that persons enticed by the accused to "engage in acts of prostitution" were the persons who hired out their bodies. From what we have already said, it is manifest that the servicemen did not hire out their bodies, but the prostitute did. There is no doubt the draftsman of the specification intended to allege this fact, but the words he chose state exactly the opposite. The accused's guilt can only be determined on the basis of the allegations of the specification. The allegations in specification 4 are not supported by the evidence in this record of trial.

The decision of the board of review as to specification 4 of the Charge is reversed, and the specification is ordered dismissed. The record of trial is returned to the Judge Advocate General of the Army for submission to the board of review for reassessment of the sentence on the basis of the remaining findings of guilty.

Judges FERGUSON and DARDEN concur.

---

[1] Webster's Third New International Dictionary, at page 1822, defines prostitution as follows:

"1: the act or practice of indulging in promiscuous sexual relations esp. for payment."