*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps
# Court of Criminal Appeals

Before
DALY, GROSS, and de GROOT
Appellate Military Judges

_____

**UNITED STATES**
*Appellee*

**v.**

**Cherelle J. BENTON**
Chief Aviation Maintenance Administrationman (E-7),
U.S. Navy
*Appellant*

**No. 202400302**

_____

Decided: 3 April 2026

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judge:
Kimberly J. Kelly

Sentence adjudged 3 May 2024 by a general court-martial tried at Naval Station Mayport, Florida, consisting of a members with enlisted representation. Sentence in the Entry of Judgment: no punishment.

For Appellant:
*Lieutenant Commander Marc D. Hendel, JAGC, USN (argued)*

For Appellee:
*Lieutenant Stephanie N. Fisher, JAGC, USN (argued)*
*Commander John T. Cole, JAGC, USN (on brief)*

Senior Judge GROSS delivered the opinion of the Court, in which Chief
Judge DALY and Judge de GROOT joined.

_____

**This opinion does not serve as binding precedent, but
may be cited as persuasive authority under
NMCCA Rule of Appellate Procedure 30.2.**

_____

GROSS, Senior Judge:

A general court-martial consisting of members with enlisted representation
convicted Appellant, contrary to her pleas, of one specification of willfully dis-
charging a firearm under circumstances such as to endanger human life, and
one specification of obstruction of justice in violation of Articles 114 and 131b,
Uniform Code of Military Justice (UCMJ).[1] Before us, Appellant raises five as-
signments of error.[2] Three merit discussion, and one merits relief in the form
of dismissal of the Specification for willfully discharging a firearm under cir-
cumstances such as to endanger human life. We take action in our decretal
paragraph.

## I. BACKGROUND

On the evening of 5 August 2022, Officers Sierra and Romeo of the Oak-
land, Tennessee Police Department responded to a report of an altercation and
a gunshot in Appellant's neighborhood.[3] Appellant's house was located in a

---

[1] 10 U.S.C. 914, 931b

[2] Assignments of Error (AOE) I and II challenge the factual and legal sufficiency
of Appellant's conviction for willfully discharging a firearm under circumstances such
as to endanger human life; AOE III and IV challenge the legal and factual sufficiency
of Appellant's conviction for obstructing justice. AOE V challenges the military judge's
refusal to require a unanimous verdict, which Appellant raises to preserve the issue in
the event that controlling caselaw changes to apply unanimous verdict requirement to
courts-martial. We summarily reject this AOE. *See United States v. Anderson,* 83 M.J.
291 (C.A.A.F. 2023), *cert. denied,* ___ U.S. ___, 144 S. Ct. 1003 (2024). Because we find
Appellant's conviction for willfully discharging a firearm under circumstances to en-
danger human life factually insufficient, we need not consider the legal sufficiency of
that offense.

[3] All names other than those of Appellant, military judges, and appellate counsel,
are pseudonyms.

housing subdivision, over a 30-minute drive from Naval Support Activity Millington, Tennessee. The subdivision was recently completed and was in a relatively undeveloped area surrounded by trees on three sides.

When Officers Sierra and Romeo arrived, Appellant was on the street near Personnel Specialist First Class Petty Officer (PS1) November's car. Appellant and PS1 November were dating at that time. Petty Officer November had come over to Appellant's house that night, but was not present when the police officers arrived. The officers identified themselves and told Appellant that they had received a call reporting a gunshot in the neighborhood. In response, Appellant told the officers that she did not own a gun and she had not fired a gun. Appellant also called PS1 November and told him that the police were at the house.

Petty Officer November arrived back at Appellant's house shortly thereafter. When the police officers asked PS1 November what had happened, he told the officers that he and Appellant had been fighting and that Appellant had shot a gun. Appellant then admitted that she owned a nine-millimeter pistol, had fired it once, and then placed the pistol in the glove compartment of PS1 November's car. Appellant told Officer Sierra that she had not fired the gun at PS1 November but rather shot it into the air.

Upon further questioning, PS1 November told the officers that he and Appellant had been in a verbal and physical altercation, that Appellant told him to leave her house, and after he left her house, she had pointed the pistol at him while he was standing and facing her in her front yard. Petty Officer November told the officers that he then heard Appellant fire a single shot. Petty Officer November did not see where Appellant pointed the gun when she fired it. Appellant was subsequently arrested and ultimately charged at a general court-martial.

At trial, Officer Sierra testified that he, Officer Romeo, and other officers unsuccessfully searched the area for any damage from the gunshot as well as the spent shell casing from Appellant's pistol. The Government did not offer Officer Sierra as an expert witness, and the military judge prohibited him from offering any testimony as to the possible trajectory or potential danger of a bullet that was fired into the air.

Appellant testified in her own defense. She admitted to firing the pistol in an effort to deter PS1 November from returning to her house because she said that he had attacked her earlier and was refusing to leave her property. Appellant testified that she shot the pistol one time into the air at about a 45-degree angle while standing on her porch. Appellant also admitted in her testimony that she had lied to police and had placed her pistol in PS1 November's car. She claimed that she lied because she was afraid to speak to the police

and that she had placed the pistol in the glovebox because she did not want to approach the police with a loaded weapon in her hand.

The members convicted Appellant of the sole Specification of wrongfully discharging a firearm under circumstances dangerous to human life and of obstructing justice by lying to Officers Sierra and Romeo and placing her pistol in PS1 November's car's glovebox. They acquitted her of obstructing justice by hiding the spent shell casing and of assaulting PS1 November by pointing the pistol at him. At oral argument before this Court, the Government conceded that the evidence established that Appellant fired the gun once into the air at a 45-degree angle.[4]

## II. DISCUSSION

**Legal and Factual Sufficiency**

*1. Law*

To determine legal sufficiency, we ask whether, "considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt."[5] In conducting this analysis, "*all of the evidence* is to be considered in the light most favorable to the prosecution."[6]

For offenses that occurred after January 2021, Congress changed the standard for our review to evaluate an appellant's conviction based on factual sufficiency under Article 66, UCMJ. The statute now requires that prior to this Court considering whether a conviction is factually sufficient, an appellant must make a specific showing of a deficiency of proof. A general disagreement with the verdict is insufficient to meet this requirement.[7]

We follow the Court of Appeals for the Armed Forces' (CAAF's) analysis in *United States v. Harvey* and *United States v. Csiti* in assessing the three key components of the amended Article 66(d)(1)(B), UCMJ, factual sufficiency review: (1) Appellant's specific showing of a deficiency of proof; (2) the Court affording appropriate deference to the fact that the trial court saw and heard the

---

[4] Oral Argument at 38:00.

[5] *United States v. Turner*, 25 M.J. 324, 324 (C.M.A. 1987) (citing *Jackson v. Virginia,* 443 U.S. 307, 319 (1979)).

[6] *Jackson*, 443 U.S. at 319 (internal citations omitted) (emphasis in original).

[7] *United States v. Valencia*, 85 M.J. 529, 535 (N-M. Ct. Crim. App. 2025).

witnesses and other evidence when we weigh the evidence and determine controverted questions of fact; and (3) whether this Court is "clearly convinced that the finding of guilty was against the weight of the evidence."[8]

Further, the CAAF explained in *Harvey* that the degree of deference constituting "appropriate deference to the fact that the trial court saw and heard the witnesses" will depend on the nature of the evidence at issue.[9] The CAAF specifically stated that "when the CCA can assess documents, videos, and other objective evidence just as well as the court-martial, the CCA might determine that the appropriate deference is low."[10]

*2. Analysis*

a. Appellant's Conviction for Obstructing Justice is Legally and Factually Sufficient.

In order to prove that Appellant obstructed justice, the Government had to prove (1) that Appellant wrongfully did a certain act; (2) that Appellant did so in the case of a certain person against whom there would be criminal or disciplinary proceedings pending; and (3) that the act was done with the intent to obstruct the due administration of justice.[11] "[T]he term 'criminal proceeding' as used in defining this offense has been interpreted broadly, and includes, at a minimum . . . criminal investigations conducted by police or command authorities."[12] "[M]ilitary cases have consistently held that a suspect's false statements during a criminal interrogation can, under the right circumstances, constitute obstruction of justice."[13] There is a difference between taking care to avoid detection and obstructing justice, as the Court of Military Appeals explained:

> [M]erely committing a crime in such a way as to avoid detection does not automatically trigger liability for the additional charge of obstructing justice. Admittedly, the line separating the end of the principal offense from the beginning of obstruction of justice

---

[8] 85 M.J. 127 (C.A.A.F. 2024); 85 M.J. 414 (C.A.A.F. 2025).

[9] *Harvey*, 85 M.J. at 130.

[10] *Id*. at 131.

[11] *Manual for Courts-Martial, United States* (2024 ed.) (*MCM*), pt. IV, para. 83.b. at IV-134.

[12] *United States v. Ashby*, No. NMCCA 200000250, 2007 CCA LEXIS 235, at *16-17 (N-M. Ct. Crim. App. June 27, 2007) (unpublished).

[13] *United States v. Rogers*, 78 M.J. 813, 818 (C.G. Ct. Crim. App. 2019).

is often difficult to discern. Therefore, each offense must be resolved on a case-by-case basis, considering the facts and circumstances surrounding the alleged obstruction and the time of its occurrence with respect to the administration of justice.[14]

Appellant claims that her conviction for obstruction of justice is legally and factually insufficient because the Government failed to prove each of the elements. We disagree.

In looking at the legal sufficiency of the conviction and viewing the evidence in the light most favorable to the Government, we find that a reasonable trier of fact could have found that Appellant hid the gun and lied to the police while knowing that there was or would be criminal proceedings against her. A reasonable finder of fact could also have found that Appellant's intent in doing both acts was to obstruct justice.

This is based on the nature of the acts themselves (Appellant hiding evidence and lying about her misconduct), but also on the other surrounding evidence. Appellant was seen at the passenger side of PS1 November's car as the police arrived. A reasonable trier of fact could have found that Appellant had just finished hiding the gun as the officers pulled up. Additionally, in the video footage from the officers' body worn cameras, Appellant is quick to deny owning a gun after the officers tell her that they are investigating a gunshot in the area. Finally, when questioned at trial, Appellant admitted that she knew why the police were at her residence and that she did not want to be involved in the defense of a potential gun charge.

Having found the evidence is legally sufficient, we turn to our factual sufficiency inquiry. First, we will assume without deciding that Appellant has made a specific showing of a deficiency of proof. Having done so, we weigh the evidence and give appropriate deference to the findings of the members. In conducting our review, we are not clearly convinced that Appellant's conviction for obstructing justice is against the weight of the evidence. The conviction is therefore factually sufficient.

b. <u>Appellant's Conviction for Willfully Discharging a Firearm Under Circumstances That Endanger Human Life is Factually Insufficient</u>.

To prove Appellant's guilt of this specification, the Government was required to prove beyond a reasonable doubt: (1) Appellant discharged a firearm; (2) the discharge was willful and wrongful; and (3) the discharge was under

---

[14] *United States v. Finsel*, 36 M.J. 441, 443 (C.M.A. 1993).

such circumstances as to endanger human life.[15] The offense of discharging a firearm under circumstances endangering human life historically was charged under Article 134, UCMJ. In evaluating the standard for the third element, we previously stated in *United States v. Irvin*, that "this element requires a reasonable possibility of harm to human beings. Proof that human life was actually endangered is not required. However, the evidence must demonstrate at least a reasonable potentiality for harm to human beings in general."[16]

*Irvin* involved an application of the standard set forth by the Court of Military Appeals in *United States v. Potter*, which held that "[t]he correct standard is . . . from the circumstances surrounding the wrongful discharge of the weapon, it may be fairly inferred that the act was unsafe to human life in general."[17] In *United States v. Burns*, the Air Force Court of Criminal Appeals (AFCCA) held, "Under *Potter*, the Government has a minimal burden to demonstrate that the act was unsafe to human life. However, some burden remains, and the Government must prove — through inference or otherwise — that the act was unsafe to human life in general."[18] The *Burns* Court set aside a conviction based upon the appellant's firing a single shot into the air outside an apartment complex where the Government introduced no evidence of danger to human life, and rejecting a theory that "what goes up must come down."[19]

In *Irvin*, we set aside the appellant's conviction as factually insufficient when the government proved only that the appellant fired a handgun three times into the air on a country road in rural Mississippi, finding that the government had failed to prove that the firing of the gun caused a reasonable potentiality for harm to human beings. In making that finding, we noted with approval the AFCCA's finding in *Burns* that "the idea that a bullet shot into the air presents a safety threat to human life is not so self-evident that the Government did not need to introduce any evidence on this point."[20] We also noted, "The court in *Burns* found that after reviewing over 60 cases involving convictions for similar offenses under the UCMJ, '[n]early every case contained

---

[15] *MCM*, Part IV, para. 52.b.(6) at IV-72.

[16] 80 M.J. 722, 736 (N-M. Ct. Crim. App. 2020) (citation modified).

[17] 15 C.M.A. 271, 273–74, 35 C.M.R. 243, 245–46 (1965).

[18] No. ACM S32084, 2013 CCA LEXIS 1050, at *8 (Dec. 18, 2013) (unpublished).

[19] *Id* at *9.

[20] *Irvin*, 80 M.J. at 736 (quoting *Burns*, 2013 CCA LEXIS 1050 at *9).

facts far more egregious than the appellant's behavior, involving either horizontal shooting toward occupied areas or indiscriminate shooting indoors.'"[21]

At trial, the Government's theory appeared to be that, while Appellant claimed to Officers Romeo and Sierra that she fired her pistol into the air, she actually fired in the general direction of PS1 November. This led to the Government introducing evidence from Officer Sierra that he searched nearby homes for evidence of a bullet strike, along with evidence that in his experience a 9-millimeter round could puncture brick or drywall. However, on appeal, the Government conceded that Appellant fired the gun at a 45-degree angle.

The Government urges us to find that Appellant has not made a specific showing of a deficiency of proof, or, in the alternative that we should not be clearly convinced that Appellant's conviction is contrary to the weight of the evidence. The Government seeks to distinguish *Irvin* and *Burns* based on the evidence introduced at trial that Appellant fired the pistol into the air in a residential neighborhood surrounded by occupied residences.

The evidence the Government introduced at trial was not definitive as to the trajectory of the shot. Because the Government had not provided notice of expert testimony, the military judge properly precluded trial counsel from introducing any evidence through Officer Sierra or any other witness regarding what danger a bullet fired at a 45-degree angle in that neighborhood might pose to human life generally. The evidence did show that the neighborhood was relatively secluded. The overhead views introduced into evidence showed that beyond the newly-constructed neighborhood, there was sparse, if any, population. And, most importantly, there was no evidence as to what path the bullet might have traveled or what potential lethality such a bullet might have had upon returning to earth, either in terms of where it might fall or how fast it might fall. We reject the Government's invitation to find that the population density of the neighborhood immediately surrounding Appellant's home by itself is sufficient to prove that her discharge of the firearm was under circumstances to endanger human life.

This opinion should not be read to require that the Government must introduce expert testimony any time a shot into the air is charged as a violation of Article 114, UCMJ. There may be other ways for the Government to carry its burden. However, in this case we conclude that Appellant made a specific showing of a deficiency of proof based upon the lack of evidence on the element requiring that the act was "under circumstances such as to endanger human life." Having therefore reviewed the record of trial, weighed the evidence, and

---

[21] *Id.* at 736 n.21 (quoting 2013 CCA LEXIS 1050 at *9, *13).

given appropriate deference to the trier of fact, we conclude that Appellant's conviction is against the weight of the evidence, and we are clearly convinced of that conclusion.

## III. CONCLUSION

After careful consideration of the record and briefs and argument of appellate counsel, the findings for Charge I and its sole Specification are **DISMISSED.** The findings for Charge III and its sole Specification are **AFFIRMED.** Because the members sentenced Appellant to no punishment, there is no sentence for us to reassess. A rehearing is not authorized.

FOR THE COURT:

MARK K. JAMISON
Clerk of Court